**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | |
|---|---|
| LIBERTY UNIVERSITY, on its own behalf and on behalf of its students and prospective students, <br><br> Plaintiff, <br><br> v. <br><br> RALPH NORTHAM, in his official capacity as Governor of the Commonwealth of Virginia, PETER BLAKE, in his official capacity as Director of the State Council of Higher Education for Virginia, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )  Civil Action No: 6:21CV00002 |

---

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff Liberty University ("Liberty"), by and through its attorneys, brings this Complaint against the above-named defendants, their employees, agents, and successors in office (together, "Defendants"), and in support thereof states the following:

## INTRODUCTION

1.      This civil action is brought to vindicate rights secured by the Equal Protection Clause of the United States Constitution.  Liberty seeks a judgment to preclude Defendants from unlawfully and unconstitutionally denying program eligibility for the Virginia Tuition Assistance Grant ("VTAG") to students who access higher education through online content and discriminating against those students in favor of so-called "place-based" students.

2.      Since 1973, Virginia has provided economic assistance to Virginia residents seeking higher education through the VTAG program.  For the past twenty years, online resources have proven an increasingly important tool that higher education institutions employ to educate students.

3.      The ability to obtain a quality education using online resources has been a tremendously democratizing development.  Broader access to online education has benefitted, for example, students living in rural areas, students who work full-time, students who have child-care responsibilities, students who are mobility impaired or have other health issues, students subject to military deployments and field training requirements, and students who are otherwise unable to access on-campus programming with regularity, such as first responders.  Online resources have brought higher education—and the enhanced career and economic opportunities associated with four-year bachelor's degrees—to many students who otherwise may not have had access to such education and the related opportunities.

4.      The State Council of Higher Education for Virginia ("SCHEV") is the state agency that administers the VTAG program, *see* Va. Code § 23.1-629.  SCHEV has, until this academic year, made VTAG funding available for Virginia students without distinguishing whether, or to what extent, they access educational content through online platforms.  The VTAG program has played an important role in advancing online learning and making higher education available to all Virginia students regardless of their circumstances.

5.      For the first time since the VTAG program was established, the 2020 Virginia Budget included an amendment that excludes awards to new students "enrolled exclusively in an online education or distance learning program" (the "2020 VTAG Amendments").  The 2020 VTAG Amendments specify however, that this unprecedented exclusion of, and discrimination against, students in online education or distance learning programs "shall not be applicable to otherwise place-based students required by the institution to receive distance learning instruction due to on-going COVID-19-related concerns."  In other words, the statute and its implementation draw a distinction between, and allocate funding on the basis of, ***where*** an institution educates a

2

student: (i) through an "exclusively" "online education" "program" or (ii) through an undefined "place-based" program.  Then, the statute, as implemented by SCHEV, further distinguishes between students who are educated "exclusively" through an "online education" "program" between those who do so for reasons of COVID-19 and those who do so for other health, economic, legal or personal reasons.  Only this latter segment of the first group is excluded from VTAG funding.  In implementing the 2020 VTAG Amendments, SCHEV has denied, or will deny, VTAG funding to thousands of Virginia students at Liberty, including those who receive varying proportions of their education online.

6.      The 2020 VTAG Amendments and their implementation suffer from two constitutional deficiencies.

7.      *First*, the 2020 VTAG Amendments, on their face, violate the Equal Protection Clause because no rational basis exists to distinguish between "online" and "place-based" education.  Classifying students as those who receive "online" and those who receive "place-based" education—even if there were a reasoned way to draw a line between the two—is arbitrary because no genuine differences exist in the content and quality of education received by these groups of students.

8.      Neither Governor Northam nor any sponsoring legislator has provided *any* basis for the 2020 VTAG Amendments.

9.      The only apparent justification for the 2020 VTAG Amendments' separate classification of "online" and "place-based" education—delivered by an anonymous spokesperson for Governor Northam—is a supposition that online education is less expensive because it lacks "brick-and-mortar" costs to offset.

10.     Such a distinction lacks any fit with its ostensible purpose:  The VTAG program was established and has always been implemented as a ***non-need***-based grant, both from the perspectives of the students and the institutions they attend.  VTAG awards have been provided to students without regard to (1) the school program's costs; (2) the student's financial status; or (3) whether the student had any other sources of income or funding (grants, scholarships, or otherwise) to apply towards the educational costs.  As an example of how the classification is arbitrary in light of its supposed purpose, the 2020 VTAG Amendments do not alter the eligibility for commuter students even though they—like online students—do not have to pay the "brick-and-mortar" costs associated with housing, gym, cafeteria, and other residential services.

11.     Defendants' decision to penalize online learning is particularly perplexing in light of recent developments that have highlighted the value of online educational programs.  Colleges and universities in Virginia and throughout the nation have transitioned to more online learning in an effort to combat the global novel coronavirus ("COVID-19") pandemic.  Many students will not return to campus until later in 2021, at the earliest.  Notably, as explained, the 2020 VTAG Amendments expressly exempt from the exclusion Virginia students who access educational content exclusively online as long as the student is "required by the institution to receive distance learning instruction due to on-going COVID-19-related concerns."  In other words, Defendants treat two Virginia online students differently if one accesses education online because of COVID-19-related concerns and the other, for example, accesses education online because non-COVID related health challenges make "place-based" learning impractical.  This makes no sense and lacks any rational basis.

12.     The 2020 VTAG Amendments simply violate the most basic principles of the Equal Protection Clause—that legislative distinctions must be rationally related to a legitimate

state interest.  Any distinction between "online" and "place-based" education is simply a matter of degree; and no implementable principle exists for sorting students into these binary classifications. As a consequence, the 2020 VTAG Amendments are fatally flawed regardless of SCHEV's implementation thereof.

13.    **Second**, even if some rational basis existed for the Legislature to distinguish "online" from "place-based" education, the 2020 VTAG Amendments offer no guidance on distinguishing the two, resulting in even greater arbitrariness in its application.  Reflecting the lack of any legislative standard, SCHEV has implemented the 2020 VTAG Amendments in an arbitrary and unconstitutional manner.

14.    Rather than publish any formal guidance explaining how to apply the 2020 VTAG Amendments in practice, SCHEV sent "preliminary guidance" by email to select university financial aid employees.  This preliminary guidance is set forth in Exhibit A to this Complaint.

15.    SCHEV's preliminary guidance underscores the impossibility of drawing a rational line between "online" and "place-based" students.  SCHEV implements a completely arbitrary test that turns on how a particular school happens to classify its own programs for internal administrative purposes.  For example, according to SCHEV, the law applies differently to two identical students enrolled in identical programs that require students to come to campus for 20% of their classes.  These students will be treated differently if one school happens to classify that program as an "online" program and the other happens to classify such a program as a "place-based" program.  This is unconstitutional.

16.    SCHEV's preliminary guidance repeatedly misquotes the text of the 2020 VTAG Amendments by omitting the word "exclusively" from the statutory requirement that "new incoming students enrolled *exclusively* in an online education or distance learning program are not

5

eligible to receive awards from the Tuition Assistance Grant Program." 2020 Va. Acts ch. 1289 (H.B. 30, Item 150). SCHEV rewrites this to say the 2020 VTAG Amendments apply to "students intending to receive instruction *primarily or solely* through distance learning." Exhibit A at 1 (emphasis added). Instead of the statutory test, SCHEV's preliminary guidance states that students "taking a course that is required by their distance learning program of study to be on-campus would still be considered a distance learning student" whereas a "place-based student" includes "students whose course selections in a given term include . . . distance learning courses." Ex. A at 2. Once again, identically situated students will be treated differently.

17.     Thus, even if the 2020 VTAG Amendments were allowed to stand, and SCHEV's rewrite of the statute were deemed the operative construction, SCHEV's nonsensical implementation of the 2020 VTAG Amendments would be without rational basis and independently unconstitutional.

18.     Plaintiff Liberty University, on its own behalf and on behalf of its students and prospective students, seeks a judgment and declaration that the 2020 VTAG Amendments, and SCHEV's implementation thereof, violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and are therefore void and of no effect. Liberty further seeks permanent injunctive relief requiring Defendants to treat Virginia students the same regardless of whether they access higher education through "online" or "place-based" resources.

## PARTIES

19.     Plaintiff Liberty University is one of the largest Christian universities, and the second largest private not-for-profit university, in the world. As of January 2021, the university enrolls more than 120,000 students, including more than 25,000 that reside in Virginia. Liberty

15929/7/9701875v1

consists of 17 colleges, including a school of medicine and a school of law.  A 28-member Board of Trustees governs Liberty.  Jerry Prevo is the acting president of Liberty.

20.     Liberty brings this lawsuit on behalf of itself and its students and prospective students, including students who have, will, or would, matriculate in or after the fall of 2020 and are unable to receive VTAG funding because the 2020 VTAG Amendments remove from eligibility those who "exclusively" participate in "online education or distance learning" and/or because of SCHEV's even more restrictive implementation of the amendments.  Liberty has incurred direct loss insofar as it has supplemented student resources to offset the cut in VTAG funding, and has further been assigned the rights of those students who were wrongfully denied such funding.

21.     Defendant Ralph Northam is the Governor of the Commonwealth of Virginia. Defendant Northam is sued in his official capacity, as are his employees, agents, and any successors in office.  Defendant Northam bears overall responsibility for implementing and enforcing the laws of Virginia, including responsibility for administering payments pursuant to legislative line item appropriations, including the 2020 VTAG Amendments.  Despite holding authority to veto such arbitrary, capricious, and unconstitutional appropriations, Defendant Northam failed to do so.  In fact, Governor Northam advanced similar arbitrary language removing from VTAG eligibility students enrolled in online education or distance learning programs in the first instance in his draft budget to the General Assembly.  Defendant Northam and his employees and agents are acting under color of state law.

22.     Defendant Peter Blake is the Director of SCHEV, the agency responsible for administering and implementing the 2020 VTAG Amendments, Va. Code § 23.1-629.  SCHEV is the agency that would disburse the funds to Liberty for the benefit of its Virginia-based students

absent the arbitrary revisions made in the 2020 VTAG Amendments.  Defendant Blake is sued in his official capacity, as are his employees, agents, and any successors in office.  In enforcing, administering, and adhering to the 2020 VTAG Amendments and implementing guidance, Defendant Blake and his employees and agents are acting under color of state law.

## JURISDICTION AND VENUE

23.     This action seeks declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

24.     Liberty's cause of action arises under the United States Constitution and 42 U.S.C. § 1983.  The Court has jurisdiction under 28 U.S.C. § 1331.

25.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because Liberty is headquartered in Lynchburg, Virginia and experiences the denial of funding there. Additionally, the 2020 VTAG Amendments will harm many students and prospective students who live within this judicial district, and Defendants are responsible for administering the 2020 VTAG program for all residents within this judicial district.  A substantial part of the events or omissions giving rise to the claims alleged herein arises in this district.

26.     An actual, justiciable controversy currently exists between the parties concerning the constitutionality of the 2020 VTAG Amendments.

## FACTS GIVING RISE TO THE COMPLAINT

**A.  Liberty University Is the Largest Provider of Higher Education in Virginia.**

  *i.     History of Liberty University*

27.     Jerry Falwell, Sr. and Elmer L. Towns founded Liberty University in 1971 as Lynchburg Baptist College with the goal of providing students with an education that expertly

brings knowledge and faith together.  In 1976, the school changed its name to Liberty Baptist College and then, in 1985, to Liberty University.

28.     The college achieved full accreditation with the Southern Association of Colleges and Schools Commission on Colleges ("SACSCOC") in 1980.  In 1987, Liberty received tax-exempt status from the IRS.

29.     Liberty University has grown dramatically since its founding by providing a quality education at a fair price.

30.     In the 2020–2021 academic year, Liberty University's total enrollment is expected to exceed 100,000 students.

     *ii.*     *Liberty is a leader in facilitating access to educational content online*

31.     Students at Liberty University can currently pursue more than 800 unique programs of study from the certificate to the doctoral level, including medicine, law, aeronautics, and many others.  Most of these programs are available to students through online and on-campus resources—the precise combination of which is dependent on a variety of factors, including the particular program, the particular instructor, and the particular student.

32.     Liberty's state-of-the-art online resources for educational content have made Liberty a national leader in online and distance learning and one of the most popular universities in the nation for students who want or need to access educational content online.

33.     Students often elect to enroll at Liberty because its online resources provide flexibility and accessibility that support non-traditional students like working parents, parents providing child care, military members and veterans, first responders, economically disadvantaged students, students whose health or medical issues make on campus attendance impractical, and other students who require flexibility in terms of where and when they access educational materials.

9

34.     Liberty made its first course offerings available online in or around 2000.

35.     All of Liberty's degree programs, including those that rely on online resources, are fully accredited by the SACSCOC.

36.     All Liberty students have access to Liberty's state-of-the-art digital resources. These resources allow students to connect with their classmates and to access a full array of academic resources including, for example, the online Blackboard learning management system; an online writing center offering tutorials, presentations and web resources to help students follow graduate-level writing standards; a "supplemental instruction" program allowing students to ask questions and get live feedback from instructors in these additional help sessions available for specific online courses; tutor.com, a one-on-one tutoring service; countless tutorial videos and live webinars to supplement students' education; and the library's digital online resources.  In addition, the College of Applied Studies & Academic Success provides writing assistance and remedial coursework through a central "Academic Success Center," which is offered online.

   iii.     *Liberty's online and residential programs reflect an administrative classification*

37.     Liberty has historically tracked online students separately from residential students for administrative or marketing purposes.  But this internal administrative distinction between "online" and "on campus" students does not and has never reflected a distinction between students who access their education "exclusively" online and some other type of education.  Liberty's online students can register for and attend classes within their degree program on campus, just as residential students may register for and attend online classes available in their degree program. In other words, students Liberty tracks as residential -- as well as those it tracks as online -- receive education in both online and on-campus formats.

38.     Regardless of the program in which a Liberty student is enrolled, or the resources the student uses to access his or her education, students receiving a Liberty degree receive an education that is equal in quality, rigor, and student learning outcomes.

39.     Liberty's historic "online programs" earned the #1 position in "The Best Online Colleges in Virginia" by TheBestSchools.org based on an evaluation of the university's academic quality, course and degree diversity, faculty, awards, rankings, and reputation.   Liberty also received the highest ranking out of 124 colleges and universities in Virginia offering programs online.  In addition, BestColleges.com awarded Liberty the Gold Award and a place on its "Schools of Distinction" list for ranking in the top 10 out of 2,100 online programs at colleges and universities nationwide.

40.     Alumni placement data and student satisfaction surveys also consistently reinforce the quality of Liberty's educational offerings.

   iv.   *Access to "online" education at Liberty is a question of degree*

41.     At Liberty, access to "online" education, whether a student administratively is classified as online or residential, is a question of degree.

42.     As technology has improved, Liberty has reached a point where virtually all Liberty students—even residential (a.k.a. "place-based") students—use online resources to some extent in their education.  Indeed, place-based students access a great deal of their educational content online.  And the category of "online" students likewise encompasses a wide variety of student experiences.

43.     Under the language of the 2020 VTAG Amendments, a student is ineligible for VTAG funds only if he or she accesses educational content ***"exclusively"*** online.  But education

11

of Virginia residents at Liberty does not proceed "exclusively" online, even for those students enrolled in Liberty's "online" programs.

44.     Even though certain students may not be physically present on Liberty's campus for some or all of their classroom time, many of the other people involved in educating those students and facilitating those students' access to education are physically on campus.  For example, a professor may record his or her lecture while on campus using place-based resources, or even if not physically present on campus, may use other place-based resources to prepare and present his or her lecture.  Likewise, numerous staff and other employees essential to the administration and functioning of so-called "online" programs are themselves "place-based" on Liberty's campus.

45.     In addition, though certain students may be enrolled in classes where they view lectures by a professor online, those students undoubtedly also use myriad offline resources in the completion of their education: whether by preparing offline for class in study groups, reading and studying textbooks, drafting homework assignments or papers, visiting locations for field trips, coming to campus, participating in internships, or any other number of imaginable "place-based" resources or activities.

46.     Many Virginia students enrolled in Liberty's "online" programs are ***required*** to attend on-campus intensive courses specific to their field of study.  For example, many students pursuing degrees in Engineering, Nursing, and Health Sciences are required to come to campus for in-person intensive classes and/or laboratory work to meet degree-specific requirements.

47.     All Virginia students at Liberty are invited to:

- register for and attend on-campus classes;
- use Liberty's extensive on-campus resources like the library, the career center, and the facilities related to intensive courses they may be taking such as science and technology laboratories;

12

- attend sporting and other recreational activities on campus;
- meet with professors and other faculty on campus; and
- socialize with their peers at numerous organized and *ad hoc* social events.

**B.  VTAG Is Designed to Help Virginia Students Afford an Education Without Regard to Financial Need or Additional Financial Aid.**

48.     The State Legislature established VTAG in 1972 and has appropriated funds for VTAG since 1973.  The General Assembly, Sections 23.1-628 through 635 of the Code of Virginia and the VTAG regulations, 8 VAC 40-71 et seq., set forth eligibility requirements for VTAG.  SCHEV is the agency responsible for administering the VTAG program.  Va. Code § 23.1-629.

49.     VTAG is a non-need-based grant program that "provide[s] Tuition Assistance Grants to or on behalf of Virginia students who attend eligible institutions," Va. Code § 23.1-628, and pursue eligible non-religious or theological degrees, *see* 8 VAC 40-71-10.

50.     Under Code of Virginia Section 23.1-631, "Virginia students who are obligated to pay tuition as full-time undergraduate, graduate, or professional students at an eligible institution are eligible to receive a grant for the academic year for which they enroll."  Students are limited to a total of two to four academic years of VTAG funding, depending on whether students are undergraduates pursuing an associate's degree or bachelor's degree or are graduate or professional students.  *Id.*; 8 VAC 40-71-40.

51.     The basic eligibility requirements are:

(a)     Domiciled resident of Virginia for at least one year prior to receiving VTAG or dependent of certain military personnel;

(b)     Enrolled as a full-time student at an eligible institution, in an eligible degree program; and

(c)     A completed VTAG application submitted to the education institution's financial aid office.

13

52.     As of January 2021, the following twenty-eight colleges and universities were approved for participation in the VTAG program:  Appalachian College of Pharmacy, Averett University, Bluefield College, Bridgewater College, Christendom College, Eastern Mennonite University, Edward Via Virginia College of Osteopathic Medicine, Emory & Henry College, Ferrum College, George Washington University (VA campus only), Hampden-Sydney College, Hampton University, Hollins University, Liberty University, Mary Baldwin University, Marymount University, Randolph College, Randolph-Macon College, Regent University, Roanoke College, Shenandoah University, Southern Virginia University, Sweet Briar College, University of Lynchburg, University of Richmond, Virginia Union University, Virginia Wesleyan College, and Washington & Lee University.

53.     The non-need-based status of VTAG is one of the program's fundamental and essential features.  Because VTAG is a non-need-based grant, the finances of a student or a student's family do not play any role in determining whether a student is eligible to receive VTAG monies.  Student recipients do not need to demonstrate financial need, file a financial statement or financial aid application, or repay VTAG awards.

54.     VTAG awards are also independent of the costs of the student's education (including the tuition charged by the institution providing it) as long as those expenses exceed the VTAG award.  The cost of full-time tuition at the 28 colleges and universities approved to participate in the VTAG program ranged from ***$20,500 to $74,000***.

55.     Nor does the student's receipt of other financial aid allow the reduction of a student's VTAG funding, except in the rare circumstance in which the student would receive more funding than the estimated costs of his or her schooling.  Va. Code § 23.1-633 ("The grants shall not be reduced by virtue of the student's receipt of any other financial aid from any other source.").

15929/7/9701875v1

56.     VTAG seeks to provide Virginia students with funds to defray the costs of obtaining an education without regard to need, the student's financial circumstances, or other scholarships or grants the student may have received.

57.     Liberty students have benefited tremendously from VTAG assistance over the years.  For example, more than 5,800 students received financial assistance from VTAG funding for the 2019–2020 academic year.  Each year Liberty receives testimonials during its Faces of VTAG—an outreach program that features profiles of students who are attending school with VTAG financial assistance—that emphasize how important VTAG funding is for its students.  For example, one student who is majoring in Data Networking and Security explained that he did not have enough funds to pay for tuition and that VTAG made it possible for him to attend college and pay for his first two semesters at Liberty.  An otherwise identical new student will now no longer be eligible for VTAG funding, purely because he or she opted for an online delivery format.

**C. Governor Northam and the Virginia General Assembly Change the VTAG Eligibility Requirements.**

58.     On or around December 17, 2019, Governor Northam submitted a proposed budget to the Virginia General Assembly that sought to immediately remove, for the first time in 40 years, any and all "[s]tudents enrolled in an online education or distance learning program" from "receiv[ing] awards from the Tuition Assistance Grant Program."

59.     The Virginia Senate and House each proposed separate amendments to the VTAG funding provision in Conference Committee.

60.     The Conference Committee voted to finalize its report on March 12, 2020.

61.     The Conference Committee's report revised Governor Northam's proposal in two significant ways.  First, though the Conference Committee's report grandfathered in existing students taking online or distance education programs to allow them to continue to receive VTAG

15

funds, it lowered the available grant amount below the rate for "place-based" students.  Second, and more significantly, the Conference Committee's report made all "new students in online or distance education programs" ineligible for VTAG funds beginning in the fall of 2020.

62.     Governor Northam then further amended the proposed legislation in two ways. First, he specifically revised the 2020 VTAG Amendments to make clear that the new exclusion applied only to students who are "**_exclusively_** enrolled in an online education or distance learning program" rather than any student "enrolled in an online education or distance learning program." Second, he revised the 2020 VTAG Amendments to create a carve-out saying that "[t]his requirement shall not be applicable to otherwise place-based students required by the institution to receive distance learning instruction due to on-going COVID-19-related concerns."

63.     On April 22, 2020, the Virginia Legislature approved the 2020 VTAG Amendments with Governor Northam's new amendments.

64.     Governor Northam signed the 2020 VTAG Amendments into law on May 21, 2020, to be effective July 1, 2020.

65.     In short, Governor Northam and his political allies in the Legislature have worked to remove VTAG eligibility for certain Virginia students who have, in every other year, met the eligibility requirements.

## D. The 2020 VTAG Amendments Arbitrarily Discriminate Against and Thereby Deny Equal Protection to Students Participating in Online Education and Educators Offering Online Content and Resources.

66.     The 2020 VTAG Amendments offend the Constitution.  Treating Virginia students who receive "online education" differently than their peers who use "place-based" education is arbitrary.

67.     "Equal protection . . .  requires that [a] classification . . . rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is

16

made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary.'" *Tuckahoe Ass'n v. Richmond*, 43 Va. Cir. 358 (1997) (quoting *Cox Cable Hampton Roads v. Norfolk*, 242 Va. 394 (1954)).

68.     Sorting students into "online" and "place-based" education reflects "feigned" differences.  The Legislature cannot rationally distinguish between two students attending the same lectures, doing the same homework, taking the same tests, participating in the same discussions, getting the same grades, and obtaining the same degrees because one student visits campus to some degree more than the other does.

69.     Even if there were a way to draw a comprehensible line classifying students into those who receive "online" and "place-based" education, that line would still be arbitrary because the technology used to access an education has no genuine or necessary connection to the content or quality of the education.

70.     Likewise, to the extent it were appropriate to award VTAG based on the cost of an education—the only rationale defendants have offered—the "online" versus "place-based" distinction is not rationally related to that purpose.  For example, commuter students, like online students, do not have to pay the "brick-and-mortar" costs associated with housing, gym, cafeteria, and other residential services.  Yet the 2020 VTAG Amendments do not alter the eligibility for commuter students, many of whom pay less in tuition than the "online" students who are losing their VTAG eligibility because of the 2020 VTAG Amendments.

71.     The 2020 VTAG Amendments also arbitrarily treat a subset of "exclusively" online students on par with "place-based" students so long as they are "exclusively" online "due to on-going COVID-19-related concerns."  There is no rational basis why two Virginia students enrolled in "online" programs for the same major should be treated differently where one is using online

17

resources *because* of "COVID-19-related concerns" and the other is using online resources *because* he or she is experiencing a non-COVID-19-related illness, needs to work a day job, is caring for a relative, or is unable to relocate to attend place-based classes if and when they are available again.

72.     This is particularly true since many educational institutions that initially elected to offer online access to education because of COVID-19 may elect to continue to offer online access after the COVID-19 pandemic subsides (assuming it does), either because the educational institution has already invested the resources in facilitating online access and/or because students demand to continue the receive the flexibility and other benefits that online access to education has provided them.  In short, online education is here to stay and it makes no rational difference whether the genesis of such online access is COVID-19 or something else.

73.     Even self-described "online" programs rely upon many "place-based" resources and many students in such programs attend some of their classes on campus or come to campus for aspects of their education, including numerous on-campus activities and events.  And "place-based" students at Liberty, even prior to the COVID-19 pandemic, could enroll in unlimited online classes in pursuit of their degree. As such, "place-based" students and "online" students enrolled in and attended the exact same classes—whether those classes expected physical attendance on Liberty's campus or virtual attendance through the internet.

74.     The exclusion from VTAG eligibility of online students—who, like "place-based" commuter students, have reduced the costs of their education by removing certain brick-and-mortar costs through accessing educational content online—lacks a rational basis.  This exclusion punishes Liberty and its students who have sought to decrease brick-and-mortar costs through substantial investment in state-of-the-art technological resources.

75.     For example, Student X is a Virginia resident living in Lynchburg and supporting her family with a full-time job.  Prior to the 2020 VTAG Amendments, she relied primarily on online resources to pursue a superlative, but affordable and flexible, college degree from Liberty University with the support of VTAG funding.  Student X successfully completed her undergraduate degree in May.  Now, even though she may want to pursue a graduate degree and attend classes on campus as her work schedule allows, SCHEV has deemed her ineligible for VTAG assistance as her full-time job requires the flexibility provided by Liberty's online program.  Exacerbating the situation, SCHEV's guidance does not make clear what Student X could do in order to be eligible to receive VTAG assistance (*e.g.,* physically traveling to Liberty's campus a certain number of times).

76.     The 2020 VTAG Amendments effectively punish students who, for practical purposes, happen not to live near enough to a specific university campus (or are unable to relocate near enough) so they need to rely on "online" or "distance learning" to pursue an education.  Rewarding someone because he or she lives on, or close to, a campus is not a legitimate government interest.

77.     Many non-traditional students—such as working parents, parents providing child care, military members and veterans, first responders, economically disadvantaged students and students with health or medical problems—do not have flexibility in terms of where and when they can access educational materials and are often unable to completely change their work schedules and lives to travel to a campus to take a "place-based" class in the limited window when it is offered.  There is no rational reason to punish these students by excluding them from receiving VTAG funding simply because they view lectures and participate in many aspects of campus life virtually rather than, or in addition to, physically on campus.

78.     Such inexplicable differential treatment discriminates against online educators and students without any rational basis.

**E. SCHEV's Implementation of the 2020 VTAG Amendments, Which Abandons the Statute's Language, Is Independently Unconstitutional.**

79.     In addition to the lack of a rational basis to separately classify "online" and "place-based" programs, the statute provides no guidance on how to sort students into each category. SCHEV's resulting implementation of the statute is unconstitutionally arbitrary and discriminatory.

*i. How SCHEV operates*

80.     As the administering agency of the VTAG program, Va. Code § 23.1-629, SCHEV provides financial aid directly to each eligible educational institution.  *See* 8 VAC 40-71-30.  Each educational institution then credits the accounts of the VTAG-recipient students.

81.     SCHEV "may adopt regulations consistent with [the implementing statute] and appropriate to the administration of [VTAG]," including by "defin[ing] by regulation such terms used in this article as 'full-time,' 'undergraduate,' 'graduate,' 'professional,' and 'financial aid.'" Va. Code § 23.1-629.

82.     In practice, SCHEV disburses a percentage of an institution's estimated allocation of funds at the beginning of a given term (fall, spring, summer).  *See* 8 VAC 40-71-30.  The allocation is the projected total VTAG amount for the institution per term based on the enrollment numbers for the prior academic year for each institution (unless the institution presents new enrollment factors). *Id.*

83.     After the "census date" for each term, the time where students' credit hour enrollments are locked for financial aid purposes, the institution certifies to SCHEV that each VTAG applicant is enrolled as a full-time student who meets all other eligibility requirements to

20

receive VTAG.  *Id.*  At this point, SCHEV reviews the certifications from the institution to see if

it disbursed the correct amount of VTAG funding to each institution.  *Id.*  If SCHEV disbursed too

few VTAG funds to the institution, it is required to disburse the underpaid funds.  *Id.*  If SCHEV

disbursed excess VTAG funds to the institution, the institution must return those excess funds to

SCHEV no later than the end of the fiscal year unless SCHEV requests the funds sooner, in which

case the institution must return the excess funds within 30 days of SCHEV's request.  *Id.*

84.     SCHEV has not finally allocated VTAG funds for the 2020–2021 academic year,

which will be done sometime after the conclusion of the spring semester.

85.     SCHEV states that it does not "discriminate on the basis of race, color, national

origin, sex, religion, age, or disability when making award decisions or reviewing appeals."

86.     SCHEV has admitted that online and distance learning "can provide an opportunity

for [students to] take a course independently, working around [their] own schedule at [their] own

pace," which can be very helpful to students who "[w]ork[] a full-time job" or "ha[ve] a family."

*ii.  SCHEV's administration of the 2020 VTAG Amendments*

87.     On March 16, 2020, a SCHEV employee reached out to Liberty University to seek

"help [to] address [V]TAG eligibility if residential students need to use on-line programs this fall."

88.     SCHEV admitted that, under a literal reading of the proposed statute as it existed

at the time (*i.e.*, before the word "exclusively" was added), it would be possible that **no** students

would be eligible for VTAG since they may all be attending classes with the aid of online resources

given school closures mandated by the COVID-19 outbreak.

89.     A Liberty representative promptly responded by "agree[ing] that the current

[V]TAG eligibility language is ambiguous" and explaining "we do not see a clear line between

residential and on-line education."   This Liberty representative explained that, in Liberty's

21

experience, "most students—whether or not residing on campus—take part in on-line education; how they do so is a matter of degree."

90.     The Legislature has not defined "online education program," "distance learning," or "place-based students" in the 2020 VTAG Amendments or in any prior iteration of VTAG.

91.     SCHEV has also not implemented any public regulations or guidelines that purport to define "online education program," "distance learning," or "place-based students." *See* 8 VAC 40-71-10 et seq.  During SCHEV's July 13, 2020 meeting, SCHEV indicated that it plans to formalize guidance related to VTAG and distance learning sometime in 2021, which is well beyond the start and end of the fall 2020 semester, the start of the spring 2021 semester, and more than eight months after Governor Northam signed the 2020 VTAG Amendments into law.  State Council of Higher Education for Virginia, Resources and Planning Committee, Minutes, at 110 (July, 13, 2020).  This inaction demonstrates that even SCHEV is having trouble parsing the irrational distinction that the 2020 VTAG Amendments impose.

92.     In the meantime, SCHEV has circulated "preliminary guidance for phasing out program support for distance learning"  via email to financial aid employees of certain schools in June and August 2020, instructing schools on how to implement the 2020 VTAG Amendments.  SCHEV's "preliminary guidance" was issued without any public notice or comment period.  Not only is this preliminary guidance's construction of the statute independently unconstitutional because it arbitrarily treats identical students differently for no legitimate government purpose, but it also materially departs from the statutory language.

93.     For example, SCHEV's preliminary guidance begins by saying:

# Virginia Tuition Assistance Grant Program:
## Preliminary guidance for phasing out program support for distance learning

The following text from the 2020 Act of Appropriation, Chapter 1289, is effective July 1, 2020. This guidance was updated on August 10, 2020. See new section C below.

> *Item 150*
> *11. Beginning with the fall of 2020, new incoming students enrolled in an online education or distance learning program are not eligible to receive awards from the Tuition Assistance Grant Program. However, existing students enrolled in online education or distance learning programs as of the 2019-20 academic year shall remain eligible to receive awards of up to the 2019-2020 award amounts for as long as the student maintains enrollment in each successive fiscal year, unless granted an exception for cause by SCHEV, until current degree completion or current degree program eligibility limits have otherwise expired, whichever comes first. This requirement shall not be applicable to otherwise place-based students required by the institution to receive distance learning instruction due to on-going COVID-19-related concerns. Council shall develop appropriate guidance for implementation of this requirement, including definitions and administrative procedures.*

Ex. A at 1.

94. This language differs from the actual statutory language, as evidenced by the following redline:

> *11. Beginning with the fall of 2020, new incoming students enrolled* ~~*exclusively*~~ *in an online education or distance learning program are not eligible to receive awards from the Tuition Assistance Grant Program. However, existing students enrolled* ~~*exclusively*~~ *in online education or distance learning programs as of the 2019-20 academic year shall remain eligible to receive awards of up to the 2019-2020 award amounts for as long as the student maintains enrollment in each successive fiscal year, unless granted an exception for cause by SCHEV, until current degree completion or current degree program eligibility limits have otherwise expired, whichever comes first. This requirement shall not be applicable to otherwise place-based students required by the institution to receive distance learning instruction due to on-going COVID-19-related concerns. Council shall develop appropriate guidance for implementation of this requirement, including definitions and administrative procedures.*

23

95.     SCHEV's egregious rewriting of the statutory language—dropping the word "*exclusively*"—is not an isolated incident.  SCHEV's June 24, 2020 email to school financial aid administrators contained an identical redraft.

96.     SCHEV's abandonment of the controlling statutory language demonstrates the unconstitutional irrationality of the VTAG Amendments because SCHEV's construction acknowledges that it is unlikely that any student at any institution "exclusively" uses only online resources.  Although students may be enrolled in an "online" class, they undoubtedly use myriad offline (or "place-based") resources in the completion of classes.  And in some degree programs, students are required to come to campus for in-person laboratory work.

97.     For example, students enrolled in Liberty's "online" program can—and do—register for and attend classes on campus within their degree program, just as residential students may register for and attend online classes available in their degree program.  The result is that "online" and "residential" students are often intermingled in Liberty's online and on-campus classrooms, regardless of whether students are considered "online" or "residential" for Liberty's administrative purposes.

98.     SCHEV's preliminary guidance not only writes the word "exclusively" out of the statute, but also introduces a new standard that denies access to VTAG for students who "receive instruction *primarily or solely* through distance learning."  Ex. A at 1.  This "primarily or solely" standard further restricts student access to VTAG and is even more arbitrary than the statute's "exclusively" test.

99.     SCHEV's preliminary guidance offers no objective basis to determine how much online or distance learning is too much and thus results in VTAG disqualification.

100.    Instead, SCHEV abdicates its rulemaking responsibilities and appears to rely on how particular educational programs are administratively classified by the schools who offer them. These classifications are not based on real differences.

101.    SCHEV's guidance states that a student enrolled in an "online program" who takes half of his classes online and half on campus is *ineligible* for VTAG where a student enrolled in a "place-based" program who also takes half his classes online and half on campus is *eligible* for VTAG.  *See* Ex. A at 1-2.  Indeed, SCHEV says that a student enrolled in a "place-based" program is *eligible* for VTAG even if he takes *all of his classes online except for one*.  *See id.* at 2 ("Place-based students" include "students whose course selections in a given term include, though not exclusively, distance learning courses.")  In contrast, SCHEV says that a student enrolled in an online program is *ineligible* for VTAG even if he takes *all of his classes on campus except for one*. *Id.* at 1 (a student in an online or distance learning program is ineligible even if taking courses that are "required by their distance learning program of study to be on-campus.").  This serves no legitimate governmental purpose.

102.    SCHEV's preliminary guidance is unconstitutionally circular.   It defines a "distance learning student" (leaving out the "online" part) as "any student placed into a distance learning program of study."  *Id.* at 1.  It then defines a "distance learning program of study (again, leaving out the "online" part) as a program with "requirements" that are "unique to students intending to receive instruction primarily or solely through distance learning." *Id*.  In other words, SCHEV defines a distance learning student as a student enrolled in a distance learning program and a distance learning program as one that enrolls distance learning students.  This circular definition highlights SCHEV's abdication of its responsibility under the statute to conduct an individualized review to determine if a student is enrolled in an *exclusively* online program.

Instead, SCHEV improperly relies on the schools' own administrative classifications, which are not uniform. This is a completely arbitrary approach to awarding VTAG.

103.     SCHEV's application of the statute to Liberty's current educational programs is radically over- and under-inclusive. For example, a student enrolled in a "place-based" program, but who relies extensively on online resources to pursue his education, would be eligible to receive a VTAG. However, a student enrolled in an "online" program, but who relies extensively on "place-based" resources to pursue his education, would *not* be eligible to receive VTAG. As applied to Liberty's programs, this amounts to unconstitutional discrimination.

104.     For example, two Liberty students may elect to enroll in the same program within different delivery formats—"Student A" chooses an online delivery format, while "Student B" opts for a place-based delivery format. Both students are domiciled in Virginia and live off-campus within a short commute from the school. Student A, who chooses the online delivery format, regularly visits campus to study or complete lab requirements and research in the library, meets with faculty in person, attends weekly convocation on campus, and uses campus support services for weekly counseling. Though Student A depends heavily on place-based resources for successful degree completion, he or she is treated differently by SCHEV under the 2020 VTAG Guidelines and is not afforded the same financial support as Student B, who chooses the place-based delivery format. This is true even if Student B does not use any on-campus facilities or offerings beyond occasionally attending class in a physical classroom. In the end, these two students are afforded the same campus resources and will graduate with the same degree, but only one of them, Student B, will be able to rely on VTAG funding for financial assistance.

105.     The same irrational distinction arises when comparing Liberty Student A above— who is administratively enrolled to receive an "online" delivery format, but depends heavily on

place-based resources for successful degree completion—and Student Z from another university or college, who engages in identical on- and off-campus activities as Student A, but whose school administratively classifies him or her as "place-based."  Student A, again, is treated differently by SCHEV under the 2020 VTAG Guidelines and is not afforded the same financial support as Student Z, merely because two schools happen to administratively classify otherwise identical programs differently.

106.     SCHEV's implementation of "[s]pecial rules" for the COVID-19 crisis underscores the arbitrary nature of the line SCHEV attempts to draw.  SCHEV's preliminary guidance instructs that students enrolled in "a campus-based (place-based) program of study who opt to enroll fully on-line due to a COVID-19 related concern may be awarded [V]TAG" whereas students "enrolled into a distance learning program of study shall not be eligible for [V]TAG regardless of whether distance learning is the only option available due to on-going COVID-19 related concerns."  Ex. A at 3.  In other words, a student who enrolls in a "place-based" program and who elects to take 100% online classes because of COVID-19 is eligible for VTAG.  But if this same student elects to enroll in an "online program" to take the exact same classes (perhaps at a lower cost), the student suddenly becomes ineligible for VTAG.  This is arbitrary and unconstitutional.

107.     Moreover, SCHEV's "special rules" for the COVID-19 crises marks another departure from the statutory language.  Although the 2020 VTAG Amendments state that an online student "*required by the institution* to receive distance learning instruction due to on-going COVID-19-related concerns" remains eligible for VTAG, SCHEV's guidance departs from this statutory language by providing that any student "*who opt[s] to* enroll fully on-line due to a COVID-19 related concern" may receive VTAG, so long as they do not enroll in a program that the school happens to administratively classify as an "online" program.

108.    SCHEV's implementation of the statute is arbitrary and discriminatory, and independently unconstitutional.  SCHEV's implementation of the 2020 VTAG Amendments, which rewrites the statutory language, unconstitutionally discriminates against students on the basis of administrative classifications that have no connection to any legitimate governmental purpose.

**F.  Defendants' Justification for the 2020 VTAG Amendments Is Irrational and Pretextual.**

109.    The 2020 VTAG Amendments acknowledge (and reward) colleges and universities for pivoting to offer classes in an online format during the COVID-19 pandemic and granting the same course credits and degrees to students.  But they arbitrarily disqualify Virginia students enrolled in "online education or distance learning" from receiving the same VTAG education benefits for doing the exact same coursework.

110.    The legislative record is devoid of any explanation for this differential treatment.

111.    Liberty has located only one articulated explanation: a January 30, 2020, *Inside Higher Ed* report where an anonymous spokesperson of Governor Northam said "the purpose of the [V]TAG program is to help address and offset the cost of college, notably brick-and-mortar costs associated with attending college" because "online programs, by their very nature, do not incur the same myriad of brick-and-mortar costs."

112.    The anonymous spokesperson did not explain why assessing financial metrics like increased costs of a particular educational program makes any sense as a justification for reducing student eligibility for VTAG funding.  The VTAG program is, and always has been, a non-need-based grant available to students regardless of (1) the school program's costs; (2) the student's financial status; or (3) whether the student had any other sources of income or funding (grants, scholarships, or otherwise).

15929/7/9701875v1

113.   The justification purportedly proffered by Governor Northam's anonymous spokesperson is pretextual.

114.   If Governor Northam and the Legislature wanted VTAG monies to go exclusively to higher-cost schools, a minimum-tuition requirement for students to establish eligibility for VTAG funding would be the most direct route.  But such a requirement would make no sense and would simply encourage schools to increase their tuition.

115.   The Governor's purported justification also highlights the arbitrariness of the distinction the 2020 VTAG Amendments attempt to draw: a student attending a "place-based" program that costs less than an online program would still be eligible to receive VTAG.

116.   Students at certain VTAG-eligible universities who attend classes on campus but do not live on campus receive discounted "commuter rates" that remove, among other things, the most expensive brick-and-mortar costs associated with attending college.  Yet the 2020 VTAG Amendments continue to provide eligibility for commuter students, even if their educational costs are lower than students pursuing an online education.

117.   If Governor Northam and the Legislature truly wanted to use VTAG solely to offset housing costs associated with residential students, commuter students would also be ineligible under the 2020 VTAG Amendments.  But they are not, demonstrating the statute's unconstitutional irrationality and the Legislature's pretext to target online education.

118.   The 2020 VTAG Amendments are not only arbitrary and without rational basis but, on information and belief, were designed for the improper purpose of harming Liberty University.

119.   Multiple legislators expressed concerns about the impact this amendment would have on Liberty and its students, acknowledging, for example, the "critical" nature of the VTAG funding for "working adults and students at Liberty University."

120.    The 2020 VTAG Amendments threaten to wreak severe economic and reputational harm on Liberty.

**G.  The 2020 VTAG Amendments, as Implemented by SCHEV, Will Unfairly Harm Liberty University, Its Students and Online Students Throughout Virginia.**

121.    Defendants' arbitrary and ill-defined distinction between online education and "place-based" education threatens to deprive thousands of Virginia students of educational choice. These students will be forced to choose between (i) attending a different school that happens to be closer to where they reside (if they are able to do so at all); (ii) forgoing the VTAG benefits and resources available to other Virginia residents; or (iii) deferring their educational goals entirely.

122.    In addition, because accessing education online can be less expensive than doing so not online, or "place-based," the 2020 VTAG Amendments threaten to disproportionally harm the economically disadvantaged who may not be able to otherwise afford a quality "place-based" education.

123.    The 2020 VTAG Amendments also threaten to harm disabled students disproportionally who may need accommodations better facilitated through online education, as well as scores of working parents, parents providing child care, military members and veterans, first responders, and others who make up a disproportionate share of students utilizing online resources to access an education.

124.    The 2020 VTAG Amendments also harm, and threaten to impose still further harms upon, Liberty.  Students unable to secure VTAG funding may decline to attend Liberty.  As such, to attract these students, Liberty needs to provide alternative funding.  The 2020 VTAG Amendments drove Liberty to undertake precisely such mitigation.  Specifically, in order to reduce the harm the 2020 VTAG Amendments inflict, Liberty instituted a scholarship award for students who would have received VTAG funding in every prior year, but were excluded from receiving

VTAG funding under the 2020 VTAG Amendments.  Liberty's recourse to such drastic measures confirms how the 2020 VTAG Amendments directly harm Liberty.  And to the extent students decline to enroll at Liberty because of uncertainty over Liberty's mitigation continuing, Liberty will suffer reputational harm.

125.    The 2020 VTAG Amendments will also harm other institutions throughout the Commonwealth with online higher education programs.  For example, the 2020 VTAG Amendments also discriminate against the traditionally online programs at Averett University, Bluefield College, Eastern Mennonite University, George Washington University (VA campus), Hampton University, Mary Baldwin University, Marymount University, Regent University, Shenandoah University, Virginia Union University, and Virginia Wesleyan College.  Liberty and other educational institutions will suffer economic and reputational harm as a result of Defendants' actions.

126.    The 2020 VTAG Amendments are arbitrary, without rational basis, and harmful to (i) thousands of Virginia students, (ii) Liberty University, and (iii) other educational institutions that provide "online education or distance learning."

## CAUSE OF ACTION

### Count I—(Violation of U.S. Constitution)

127.    Plaintiff incorporates and realleges all preceding paragraphs by reference.

128.    Liberty brings this civil action pursuant to 42 U.S.C. § 1983, and through the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), and the United States Constitution to vindicate rights secured by the Equal Protection Clause of the United States Constitution.

129.    In taking the actions as hereinabove alleged, Defendants each are "persons" who acted "under color of" state law, and/or conspired with such persons; and they have subjected, or

caused to be subjected, Plaintiff Liberty University, along with its students and prospective students, to the deprivation of rights, privileges and immunities secured to it by the United States Constitution and laws, specifically the Fourteenth Amendment and its guarantee of equal protection under the law.

130.    Plaintiff Liberty University, along with its students and prospective students, has been proximately and directly injured by the unlawful actions by Defendants as herein alleged, in violation of clearly established law; and such injuries are continuing and threatened.

131.    Liberty University's students and prospective students include students who are members of a class of persons who seek to pursue "online education or distance learning" against whom Defendants discriminate without any rational basis.

132.    Liberty University is also a member of a class of educational institutions that provides "online education or distance learning" that Defendants discriminate against without any rational basis.

133.    The 2020 VTAG Amendments discriminate against online educators and students in an arbitrary manner, serve no rational basis, and on information and belief were enacted to discriminate against Liberty for an improper purpose.

134.    In addition, SCHEV's implementation of the 2020 VTAG Amendments is contrary to the express statutory language and is independently arbitrary and unconstitutional by distinguishing between students and classes of students without any rational basis.

135.    Even though the 2020 VTAG Amendments exclude only students who are "exclusively" attending "online and distance learning programs," SCHEV has improperly and unconstitutionally rejected numerous VTAG applicants attending Liberty University even though they do not take classes "exclusively in an online education or distance learning program."

15929/7/9701875v1

**RELIEF REQUESTED**

WHEREFORE, Liberty University respectfully requests that this Court enter judgment in its favor, and in favor of its students and prospective students, and asks the Court to:

A. Adjudge and declare that Defendants are in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

B. Issue a declaratory judgment that the 2020 VTAG Amendments' exclusion of "online education or distance learning" violates the United States Constitution and is therefore void and of no effect;

C. Issue an injunction restraining the enforcement, operation, and execution of the 2020 VTAG Amendments' exclusion of "online education or distance learning" by enjoining Defendants, including their agents, employees, appointees, or successors from enforcing, threatening to enforce, or otherwise applying such condition for VTAG eligibility;

D. Issue permanent injunctive relief requiring that Virginia students pursuing "online education or distance learning" be treated on par with Virginia students pursuing "place-based" education for the purpose of awarding and disbursing VTAG funds;

E. In the alternative, issue a declaratory judgment that otherwise-eligible Liberty students remain eligible for VTAG funds under the 2020 VTAG Amendments because their use of online resources does not equate with being enrolled in an "exclusively" online or distance learning program;

F. Grant Plaintiff attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

G. Grant such further relief as the Court deems just and proper.


Dated: January 8, 2020


Respectfully submitted,


By:     /s/ H. David Gibson
        H. David Gibson (VSB No. 40641)
        GENTRY LOCKE
        10 Franklin Road S.E., Suite 900
        Roanoke, VA 24011
        Telephone: (540) 983-9300
        Fax: (540) 983-9400
        gibson@gentrylocke.com

15929/7/9701875v1

**Ropes & Gray LLP**
Douglas Hallward-Driemeier (pending pro hac vice)
Chong S. Park (pending pro hac vice)
Mark S. Popofsky (pending pro hac vice)

2099 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: (202) 508-4600
Fax: (202) 508-4650
Douglas.Hallward-Driemeier@ropesgray.com
Chong.Park@ropesgray.com
Mark.Popofsky@ropesgray.com

Firm I.D.: 47644

*Attorneys for Liberty University*

34